## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. _____

| | |
|---|---|
| AUSTRALIAN THERAPEUTIC SUPPLIES PTY LTD, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| NAKED TM, LLC, | )<br>) |
| Defendant. | )<br>)<br>) |

_____

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Australian Therapeutic Supplies Pty Ltd ("Plaintiff"), by and through the undersigned counsel, alleges the claims set forth in this Complaint against Defendant, Naked TM, LLC ("Defendant").

### NATURE OF THE ACTION

1.      This is an appeal of a final decision of the Trademark Trial and Appeal Board ("Board") of the U.S. Patent and Trademark Office ("US PTO") pursuant to 15 U.S.C. § 1071(b).

2.      On December 16, 2021, the Board denied Cancellation No. 92056381 to cancel U.S. Trademark Registration No. 3325577 (the "'577 Registration").

3.      The filing of this action is timely under 15 U.S.C. § 1071(b) and 37 C.F.R. § 2.145.

### PARTIES

4.      Plaintiff is a proprietary limited company organized under the laws of Australia and has a principal place of business at 1/21 Mars Road, Lane Cove 2066, New South Wales, Australia.

5.      Upon information and belief, Defendant is a limited liability company organized in Florida and has a principal place of business at 50 South Pointe Drive, # 1401, Miami, Florida, 33139, U.S.A.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 21(b) of the U.S. Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1071(b), which permits a party to challenge a final decision of the Board by filing a Federal District Court action. This Court also has subject matter jurisdiction pursuant to 5 U.S.C. § 701 *et seq.* (review of final agency decision), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks).

7.      This Court has personal jurisdiction over Defendant because, as a Florida limited liability company, it has purposefully availed itself of the benefits and protections of Florida law.

8.      Venue in this Judicial District with respect to the claims set forth herein against Defendant is proper pursuant to 28 U.S.C. § 1391(b)(1).

## THE ASSERTED TRADEMARKS

9.      Defendant is the owner of the '577 Registration for the mark NAKED covering "condoms" in International Class 10.

10.      Plaintiff is the owner of U.S. Trademark Application Serial No. 85572589 for the mark NAKED covering "condoms" in International Class 10, which remains pending as of the date of this appeal (the "'589 Application").

## ENTITLEMENT TO A STATUTORY CAUSE OF ACTION

11.      Plaintiff has an entitlement to a statutory cause of action under Section 14 of the Lanham Act, 15 U.S.C. § 1064, to cancel the '577 Registration. *Australian Therapeutic Supplies Pty Ltd. v. Naked TM, LLC*, 965 F.3d 1370 (Fed. Cir. 2020).

## FACTUAL BACKGROUND

### I.     Plaintiff's Common Law Rights In and To the Marks NAKED and NAKED CONDOMS

12.     Plaintiff has engaged in the business of selling condoms since as early as 1989.

13.     Plaintiff, beginning in the late 1990s, commenced advertising and promoting condoms to consumers outside of Australia via its website using the domain condoms.au.com, as well as other domains that forwarded to that address (collectively referred to as the "condoms.au.com domain.")

14.     Shortly thereafter, Plaintiff updated its website to allow online consumers to purchase condoms directly from its website at the condoms.au.com domain. Plaintiff subsequently commenced selling and shipping condoms to consumers located outside of Australia, including to consumers located in the United States.

15.     Graham Porter, Plaintiff's Managing Director and co-owner, first adopted NAKED as a trademark in early 2000, and shortly thereafter, Plaintiff began advertising, promoting, and selling condoms wherein the marks NAKED and NAKED CONDOM (collectively "the NAKED Marks") were prominently displayed on packaging for condoms.

16.     Beginning in approximately 2001, Plaintiff launched an online marketing campaign on its website featuring an animated couple practicing protected sex. Plaintiff adopted the marketing campaign to advertise and promote Plaintiff's condoms to online consumers and drive traffic to Plaintiff's website while at the same time, educating the public on safe sex. Plaintiff's animated marketing campaign became popular in the United States.  Indeed, as of November 2002, almost a quarter of online visitors to Plaintiff's website originated from colleges and similar education institutions in the United States, with said institutions using the ".edu" top level domain name.

17.     Since at least as early as August 23, 2002, Plaintiff has advertised and offered for sale condoms featuring the NAKED Marks on its website. Almost immediately thereafter,

Plaintiff received online orders for NAKED condoms and commenced shipping NAKED condoms to consumers residing in the United States.

18.     In early 2003, based on the success of the aforementioned 2001 online marketing campaign, Plaintiff developed a premium version of its safe sex video that it offered to online consumers with the option of paying $1.95 USD by credit card to view premium, uncensored animations practicing protected sex.

19.     Commencing no later than April 2, 2003, Plaintiff launched the premium marketing campaign on its website and, on the same day, began receiving purchase orders from consumers residing in the United States for the premium animated content with payments processed by VeriSign, Inc., a third-party payment processor.

20.     Plaintiff's animated marketing content on its website resulted in the sale and shipment of NAKED condoms into the United States before September 22, 2003, the constructive use filing date of the NAKED mark set forth in the '577 Registration, including sales to consumers residing in the United States on (1) April 7, 2003, (2) April 17, 2003, (3) April 19, 2003, (4) May 1, 2003, (5) August 1, 2003, (6) August 12, 2003, (7) August 24, 2003, and (8) August 29, 2003.

21.     At all relevant times from August 2002 to present, Plaintiff has continuously advertised, promoted, offered for sale, and shipped condoms bearing the NAKED Marks to consumers residing in the United States in the fulfillment of sales made on Plaintiff's website.

22.     Plaintiff has not abandoned the NAKED Marks and Plaintiff continues to sell and distribute condoms bearing said marks to consumers in the United States.

## II.     The '589 Application

23.     On October 29, 2012, Plaintiff filed the '589 Application with the US PTO for the mark NAKED for "condoms" in International Class 10 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on Plaintiff's actual and continued use of the mark NAKED in United States commerce dating back to at least as early as August 1, 2003.

24.     On March 5, 2013, the US PTO issued an Office Action to the '589 Application based, in part, upon the '577 Registration, the registration at issue in this appeal.

25.     On August 17, 2013, the US PTO issued a suspension notice relating to the '589 Application pending the outcome of Cancellation No. 92056381 against the '577 Registration. The '589 Application remains pending and refused as of the date of this appeal.

**III.     The '577 Registration**

26.     On September 22, 2003, Defendant's predecessor-in-interest, Creative Resources, LLC filed U.S. Trademark Application Serial No. 78303400 (the "'400 Application") with the US PTO seeking to register the mark NAKED for goods in International Class 10, described specifically as "the mark consists of the text 'NAKED' in all forms including various applications specific to condoms and prophylactics and it's [sic] spelling is recognized in phoenetic [sic] annd [sic] abbreviated versions (ie. Nakedcondoms.com, nakd condoms etc)."

27.     Cindy Mason was employed by Jud Ireland, President of Creative Resources, LLC, as an independent contractor to serve as Mr. Ireland's personal assistant from 2000 until approximately 2011.

28.     Based on information and belief, Cindy Mason resided in Telluride, Colorado on September 22, 2003.

29.     Based on information and belief, Jud Ireland was not physically present in Telluride, Colorado on September 22, 2003.

30.     Cindy Mason is not, and at all relevant times was not, a person with legal authority to bind Creative Resources, LLC.

31.     Cindy Mason is not and has never been a "qualified practitioner" as defined in 37 C.F.R. § 11.14.

32.     Cindy Mason filed the '400 Application on behalf of Creative Resources, LLC using the US PTO's Trademark Electronic Application System ("TEAS").

33.     Cindy Mason personally inserted the electronic signature of Jud Ireland, President

of Creative Resources, LLC, in the declaration accompanying the '400 Application when it was filed with the US PTO on September 22, 2003, attesting that:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief and believed to be true.

34.     Cindy Mason filed the '400 Application under Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b), and, by inserting Jud Ireland's electronic signature, represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the mark NAKED in commerce for condoms as of September 22, 2003.

35.     On January 27, 2004, Cindy Mason sent an email from her personal email account to the US PTO requesting that the '400 Application be amended pursuant to 37 C.F.R. § 2.71. In her email, Cindy Mason, on behalf of Defendant's predecessor-in-interest, requested that the identification of the goods in the '400 Application be amended to "condoms" in International Class 10 and that Creative Resources, LLC be amended from a "corporation" incorporated under the laws of the United States to a "limited liability company organized under the laws of Colorado." Cindy Mason personally inserted Jud Ireland's electronic signature at the bottom of her email and, shortly thereafter, the US PTO amended the '400 Application based upon the purported verified signature of Jud Ireland.

36.     On August 31, 2004, the US PTO issued a Notice of Allowance for the '400 Application based upon the averments as supported by a declaration purporting to have been made by Jud Ireland, namely, that Creative Resources, LLC had a *bona fide* intent to use the

mark NAKED on condoms at least as early as September 22, 2003.

37.     On February 25, 2005, Cindy Mason, on behalf of Defendant's predecessor-in-interest, filed a request with the US PTO for an extension of time for filing a statement of use (the "First Extension Request") for the '400 Application pursuant to 15 U.S.C. § 1051(d)(2) and 37 C.F.R. § 2.89(a). Cindy Mason personally inserted Jud Ireland's electronic signature into the verified statement, required under 37 C.F.R. § 2.89(a)(3), attesting that Creative Resources, LLC still had a *bona fide* intention to use the mark NAKED on condoms as of February 25, 2005.

38.     On March 25, 2005, the US PTO issued a Notice of Approval of Extension Request for the '400 Application based upon the averments as supported by the verified statement purporting to be that of Jud Ireland, namely, that Creative Resources, LLC still had a *bona fide* intent to use NAKED on condoms as of February 25, 2005.

39.     On August 11, 2005, Cindy Mason, on behalf of Defendant's predecessor-in-interest, filed a second request with the US PTO for an extension of time to file a statement of use (the "Second Extension Request") for the '400 Application pursuant to 15 U.S.C. § 1051(d)(2) and 37 C.F.R. § 2.89(b). In doing so, Cindy Mason personally inserted Jud Ireland's electronic signature into the verified statement, required under 37 C.F.R. § 2.89(b)(3), and attested that Creative Resources, LLC was engaged in "product or service research development" and, thus good cause existed for Creative Resources, LLC's continuing *bona fide* intention to use the NAKED mark in commerce as of August 11, 2005.

40.     On August 30, 2005, the US PTO issued a Notice of Approval of Extension Request for the '400 Application based upon the averments as supported by the verified statement purporting to be that of Jud Ireland, namely, that Creative Resources, LLC still had a *bona fide* intent to use NAKED on condoms as of August 11, 2005.

41.     On October 30, 2007, the '400 Application issued as the '577 Registration on the US PTO Principal Register.

42.     On or about August 26, 2009, Creative Resources, LLC assigned all rights, title,

and interest in the '577 Registration to Defendant having an address of 245 Pages Creek Drive, Wilmington, North Carolina 28411.

**IV.     Defendant's Lack of Meaningful Investment**

43.     Creative Resources, LLC was organized under the laws of Colorado on January 8, 1996 at which time it had a principal address of 963 Wapiti Road, P.O. Box 689, Telluride, Colorado 81435.

44.     Creative Resources, LLC was not organized for the purpose of selling condoms and was also used by Jud Ireland, its President, for his personal real estate investments.

45.     Creative Resources, LLC did not have any employees on January 8, 1996, or at any point prior to its dissolution on November 23, 2010.

46.     Creative Resources, LLC did not sell, offer to sell, or market NAKED branded condoms in the United States prior to September 22, 2003.

47.     Creative Resources, LLC did not have a written business plan prior to September 22, 2003.

48.     Defendant's accounting records do not show meaningful financial investment to develop NAKED condoms before December 31, 2003.

49.     Creative Resources, LLC did not have a written agreement with any third party to design or manufacture condom foil wrappers featuring the mark NAKED prior to September 22, 2003.

50.     Creative Resources, LLC did not have a written agreement with any distributors, wholesalers, or retailers to offer to sell or sell condoms in the United States prior to September 22, 2003.

51.     Creative Resources, LLC did not own or operate a retail store or Internet website that sold condoms prior to September 22, 2003.

52.     Creative Resources, LLC did not use the mark NAKED in any advertisements or brochures featuring condoms prior to September 22, 2003.

53.     As of September 22, 2003, Creative Resources, LLC had not sought regulatory approval from the U.S. Food and Drug Administration (FDA) for condoms or prophylactic devices.

**V.      Defendant's Intent-to-Use Trademark Applications, 15 U.S.C. § 1051(b)**

54.     Based on information and belief, Cindy Mason filed a total of six (6) separate trademark applications with the US PTO between May 21, 2003 and October 29, 2003 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), on behalf of Creative Resources, LLC. In doing so, Ms. Mason personally inserted Jud Ireland's electronic signature into the declarations accompanying the respective applications and represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the marks in commerce for condoms and prophylactics in International Class 10 as of the respective filing dates of each application.

55.     On May 21, 2003, Creative Resources, LLC filed U.S. Trademark Application Serial No. 78252662 with the US PTO under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), seeking to register the mark RENAISSANCE for goods in International Class 10, described specifically as "condoms / prophylactics."

56.     Cindy Mason filed application Serial No. 78252662 under Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b), and, by inserting Jud Ireland's electronic signature into the declaration accompanying the same, represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the mark RENAISSANCE in commerce for "condoms / prophylactics" as of May 21, 2003.

57.     On information and belief, Creative Resources, LLC never sold condoms or prophylactics bearing the mark RENAISSANCE in United States commerce.

58.     Creative Resources, LLC never filed an amendment to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and application Serial No. 78252662 was subsequently abandoned.

59.     On May 21, 2003, Creative Resources, LLC filed U.S. Trademark Application

Serial No. 78252681 with the US PTO under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), seeking to register the mark Z for goods in International Class 10, described specifically as "condoms / prophylactics."

60.   Cindy Mason filed application Serial No. 78252681 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), and, by inserting Jud Ireland's electronic signature into the declaration accompanying the same, represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the mark Z in commerce for "condoms / prophylactics" as of May 21, 2003.

61.   On information and belief, Creative Resources, LLC never sold condoms or prophylactics bearing the mark Z in United States commerce.

62.   Creative Resources, LLC never filed an amendment to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and application Serial No. 78252681 was subsequently abandoned.

63.   On September 23, 2003, Creative Resources, LLC filed U.S. Trademark Application Serial No. 78304058 with the US PTO seeking to register the mark JUD for goods in International Class 10, described specifically as "the mark consists of the text 'JUD' in all forms including various applications specific to condoms and prophylactics and its spelling is recognized in it's [sic] phoenetic [sic] and abbreviated form (ie. judcondoms.com, jud condoms etc)."

64.   Cindy Mason filed application Serial No. 78304058 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), and, by inserting Jud Ireland's electronic signature into the declaration accompanying the same, represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the mark JUD in commerce for the goods identified in Paragraph 63 as of September 22, 2003.

65.   On information and belief, Creative Resources, LLC never sold condoms or prophylactics bearing the mark JUD in United States commerce.

66.     Creative Resources, LLC never filed an amendment to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and application Serial No. 78304058 was subsequently abandoned.

67.     On October 29, 2003, Creative Resources, LLC filed U.S. Trademark Application Serial No. 78320208 with the US PTO seeking to register the mark FAT BOY for goods in International Class 10, described specifically as "the mark consists of the text 'fat boy' in all forms including various applications specific to condoms and prophylactics and it's [sic] spelling is recognized in it's [sic] phoenetic [sic] and abbreviated form (ie. fatboycondoms.com etc)."

68.     On information and belief, Cindy Mason filed application Serial No. 78320208 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), and, by inserting Jud Ireland's electronic signature into the declaration accompanying the same, represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use FAT BOY in commerce for the goods identified in Paragraph 67 as of October 29, 2003.

69.     On information and belief, Creative Resources, LLC never sold condoms or prophylactics bearing the mark FAT BOY in United States commerce.

70.     Creative Resources, LLC never filed an amendment to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and application Serial No. 78320208 was subsequently abandoned.

71.     On October 29, 2003, Creative Resources, LLC filed U.S. Trademark Application Serial No. 78320234 with the US PTO seeking to register the mark BIG DOG for goods in International Class 10, described specifically as "the mark consists of the text 'BIG DOG' in all forms including various applications specific to condoms and prophylactics and it's [sic] spelling is recognized in it's [sic] phoenetic [sic] and abbreviated form (ie. bigdogcondoms.com, big dog condoms.com etc)."

72.     On information and belief, Cindy Mason filed application Ser. No. 78320234 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), and, by inserting Jud Ireland's

electronic signature into the declaration accompanying the same, represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the mark BIG DOG in commerce for the goods identified in Paragraph 71 as of October 29, 2003.

73.     On information and belief, Creative Resources, LLC never sold condoms or prophylactics bearing the mark BIG DOG in United States commerce.

74.     Creative Resources, LLC never filed an amendment to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and application Serial No. 78320234 was subsequently abandoned.

75.     On information and belief, Cindy Mason filed an additional nine (9) separate trademark applications with the US PTO between May 11, 2004 and December 2, 2004 on behalf of Creative Resources, LLC including (1) LOOSER FIT (Serial No. 78416962), (2) PERFECT FIT (Serial No. 78461079), (3) B-NAKED (Serial No. 78472774), (4) THE NEXT GENERATION CONDOM (Serial No. 78490969), (5) BETTER SEX ……..NAKED (Serial No. 78502047), (6) SAVING LIVES AND GETTING LAID…..NAKED (Serial No. 78502050), (7) LOOSER FIT TECHNOLOGY (Serial No. 78505789), (8) NAKED TECHNOLOGY (Serial No. 78505794), and (9) BETTER SEX (Serial No. 78525940).

76.     On information and belief, Cindy Mason filed each application identified in paragraph 75 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), personally inserted Jud Ireland's electronic signature into the declarations accompanying the same, and represented to the US PTO that Creative Resources, LLC had a *bona fide* intent to use the marks identified in Paragraph 75 in commerce for condoms and prophylactics as of the respective filing dates of each application.

77.     On information and belief, Creative Resources, LLC never sold condoms or prophylactics bearing the marks identified in Paragraph 75 in United States commerce.

78.     Creative Resources, LLC never filed amendments to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and the

applications identified in Paragraph 75 were subsequently abandoned.

79.     On information and belief, Jud Ireland was the president of Veraxis Int'l, Inc., a Delaware corporation with a principal address of 963 Wapiti Road, P.O. Box 689, Telluride, Colorado 81435.

80.     On information and belief, Veraxis Int'l, Inc. was not organized for the purpose of selling condoms and was also used by Jud Ireland for his personal real estate investments.

81.     On information and belief, Cindy Mason filed a total of thirteen (13) separate US PTO trademark applications between December 14, 2004 and January 19, 2005 on behalf of Veraxis Int'l, Inc. including (1) THEY FIT (Serial No. 78532085), (2) LOVE SEX (Serial No. 78532493), (3) SEX (Serial No. 78532496), (4) RELAXED FIT (Serial No. 78532498), (5) SIZE ISN'T EVERYTHING, DEVELOP YOUR FINGERS, MIND, MOUTH AND HEART (Serial No. 78532500), (6) EXPERIMENT (Serial No. 78538976), (7) STAY ON (Serial No. 78538982), (8) STAY-ON TECHNOLOGY (Serial No. 78541212), (9) HEART (Serial No. 78541214), (10) RELAXED (Serial No. 78542093), (11) NAKED STYLE (Serial No. 78544882), (12) FEEL (Serial No. 78544889), and (13) SAFETY SEAL (Serial No. 78550377).

82.     On information and belief, Cindy Mason filed each application identified in Paragraph 81 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), personally inserted Jud Ireland's electronic signature into the declarations accompanying the same, and represented to the US PTO that Veraxis Int'l, Inc. had a *bona fide* intent to use the marks identified in Paragraph 81 in commerce for "prophylactics, namely, condoms" as of the respective filing date of each application.

83.     On information and belief, Veraxis Int'l, Inc. never sold prophylactics or condoms bearing the marks identified in Paragraph 81 in United States commerce.

84.     Veraxis Int'l, Inc. never filed amendments to allege use or statement of use under Section 1(c) or 1(d) of the Trademark Act, 15 U.S.C. §§ 1051(c), (d), and the applications identified in Paragraph 81 were subsequently abandoned.

85.     By and through Creative Resources, LLC and Veraxis Int'l, Inc., Jud Ireland instructed Cindy Mason to file a total of twenty-eight (28)[1] intent-to-use trademark applications under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), between May 21, 2003 and January 19, 2005.

86.     On information and belief, Cindy Mason filed twenty-eight (28) trademark applications on behalf of Creative Resources, LLC and Veraxis Int'l, Inc. between May 21, 2003 and January 19, 2005, personally inserted Jud Ireland's electronic signature into the declarations accompanying the same, and represented to the US PTO that Creative Resources, LLC and Veraxis Int'l, Inc. had a *bona fide* intent to use the marks in commerce for condoms and prophylactics as of the respective filing date of each application.

**VI.     Plaintiff's Settlement Negotiations with Defendant**

87.     In late 2005, Plaintiff learned that Creative Resources, LLC, Defendant's predecessor-in-interest, had filed the '400 Application.

88.     On July 26, 2006, Plaintiff wrote Jud Ireland, in his capacity as President of Creative Resources, LLC, to notify him of Plaintiff's protectable trademark rights in and to the NAKED Marks in the United States that pre-dated the September 22, 2003 constructive use filing date for the '400 Application.

89.     From July 26, 2006 and continuing into early 2007, Plaintiff and Creative Resources, LLC continued to negotiate potential settlement wherein possible terms of coexistence were explored, but the parties were unable to agree, orally or otherwise, to final terms of settlement.

90.     Over the course of the next four years, Plaintiff continued to correspond with Creative Resources, LLC, and then subsequently with Defendant, regarding settlement, however, the parties were unable to agree upon final terms of settlement.

91.     On or about September 12, 2012, Plaintiff received a letter sent on behalf of

---

[1] *See* paragraphs 54, 75 and 81 *supra.*

Defendant demanding that Plaintiff cease all use of the NAKED Marks and asserting that Plaintiff was prohibited from selling and/or distributing NAKED condoms in the United States and other countries.

92.     On October 29, 2012, Plaintiff filed Cancellation No. 92056381 with the Board to cancel the '577 Registration based upon Plaintiff's prior and continuing common law rights to the NAKED Marks in the United States, among other causes of action.

93.      On December 16, 2021, the Board issued a final decision denying Plaintiff's petition to cancel the '577 Registration, the decision from which the instant appeal is taken.

## **FIRST CAUSE OF ACTION**

### **(Likelihood of Confusion, 15 U.S.C. § 1052(d))**

94.     Plaintiff incorporates the allegations set forth in Paragraphs 1 - 42 and 87 - 93 above as though fully set forth herein.

95.     Plaintiff has engaged in use analogous to trademark use by continuously promoting, advertising, marketing, and offering for sale condoms bearing the NAKED Marks on the condoms.au.com website since at least as early as August 23, 2002.

96.     Plaintiff commenced technical trademark use of the NAKED Marks through its sale, importation, and shipment of condoms bearing the same to consumers residing in the United States as early as April 7, 2003.

97.     Plaintiff, as consequence of its technical trademark use and use analogous to trademark use, is the owner of common law trademark rights in and to the NAKED Marks in the United States dating back to at least as early as August 23, 2002.

98.     Plaintiff's August 23, 2002 priority date predates the constructive use date for the '400 Application and Defendant cannot establish an earlier constructive or actual use date for the NAKED mark set forth in the '577 Registration. Therefore, Plaintiff's priority is not in dispute.

99.     The NAKED mark set forth in the '577 Registration is identical in appearance to Plaintiff's NAKED mark and is substantially similar in appearance to Plaintiff's NAKED

CONDOM mark.

100.    The NAKED mark set forth in the '577 Registration is confusingly similar to Plaintiff's NAKED Marks.

101.    The goods set forth in the '577 Registration are identical to the goods that Plaintiff promotes and sells in connection with Plaintiff's NAKED Marks.

102.    The goods set forth in the '577 Registration are likely to be marketed in the same channels of trade as the goods offered by Plaintiff under Plaintiff's NAKED Marks.

103.    The conditions surrounding the marketing of the goods that Plaintiff offers in connection with Plaintiff's NAKED Marks and the goods set forth in the '577 Registration are such that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods originate from a common source.

104.    Defendant's use of the mark NAKED on the goods set forth in the '577 Registration will result in inevitable confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), when compared to Plaintiff's NAKED Marks and the goods used in conjunction with the same.

105.    Plaintiff is or will be damaged by the continued existence of the '577 Registration. Specifically, the mark set forth in the '577 Registration consists of or comprises a mark which so resembles Plaintiff's NAKED Marks that a potential consumer is likely to be confused, mistaken, and/or deceived as to the source of the goods offered by the Plaintiff and Defendant. As such, Plaintiff requests that the '577 Registration be cancelled pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

## SECOND CAUSE OF ACTION

### (False Suggestion of a Connection, 15 U.S.C. § 1052(a))

106.    Plaintiff incorporates the allegations set forth in Paragraphs 1 - 42 and 87 - 93 above as though fully set forth herein.

107.    Since at least as early as August 23, 2002, Plaintiff has used the NAKED Marks

on condoms advertised and made available for purchase on its website.

108.    Since at least as early as April 7, 2003, Plaintiff has used the NAKED Marks on condoms sold, imported, and distributed to consumers residing in the United States.

109.    Plaintiff has not abandoned the NAKED Marks and Plaintiff continues to sell and distribute condoms bearing the same to consumers in the United States.

110.    As a result of Plaintiff's continuous use of the NAKED Marks on condoms, the purchasing public has come to exclusively associate the NAKED and NAKED CONDOMS marks with Plaintiff.  As such, Plaintiff has established valuable consumer recognition and goodwill in Plaintiff's NAKED Marks.

111.    Plaintiff's NAKED Marks have been used, and continue to be used, by the purchasing public to identify the source of Plaintiff's goods and to distinguish Plaintiff's goods from those offered by Plaintiff's competitors.

112.    Plaintiff's NAKED Marks have been in continuous use in commerce since at least as early as April 7, 2003 and, as such, Plaintiff's use predates any actual or constructive use of the NAKED mark set forth in the '577 Registration.

113.    Plaintiff is or will be damaged by the continued existence of the '577 Registration. Specifically, Defendant's NAKED mark invokes Plaintiff's established identity and persona so as to falsely suggest a connection between Defendant and Plaintiff, to the damage of Plaintiff. As such, Plaintiff requests that the '577 Registration be cancelled pursuant to Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a).

### THIRD CAUSE OF ACTION

### (Lack of *Bona Fide* Intent, 15 U.S.C. § 1051(b))

114.    Plaintiff incorporates the allegations set forth in Paragraphs 1 - 11 and 26 - 86 above as though fully set forth herein.

115.    Creative Resources, LLC, Defendant's predecessor-in-interest, did not have a *bona fide* intent to use the mark NAKED in conjunction with condoms and/or prophylactic

devices when Cindy Mason filed the '400 Application on September 22, 2003.

116.    Creative Resources, LLC did not market, plan to use or otherwise take concrete steps toward using the mark NAKED in conjunction with condoms and/or prophylactic devices before Cindy Mason filed the '400 Application on September 22, 2003.

117.    The lack of action or meaningful investment in the mark NAKED prior to September 22, 2003 suggests that Defendant's predecessor-in-interest only intended to reserve the mark and therefore lacked the requisite *bona fide* intent to use the mark NAKED on condoms when the '400 Application was filed.

118.    Creative Resources, LLC filed a total of fifteen (15) intent-to-use applications with the US PTO designating condoms in International Class 10 from May 2003 until December 2004.

119.    Creative Resources, LLC's intent-to-use applications, with the exception of the instant '577 Registration, did not register as enforceable trademarks with the US PTO and were abandoned because, *inter alia*, Creative Resources, LLC failed to substantiate use of the respective marks on condoms.

120.    Veraxis Int'l, Inc. filed a total of thirteen (13) intent-to-use applications with the US PTO designating condoms in International Class from December 14, 2004 to January 19, 2005.

121.    Veraxis Int'l, Inc.'s intent-to-use applications did not register as enforceable trademarks with the US PTO and were abandoned because, *inter alia*, Veraxis Int'l, Inc. failed to substantiate use of the respective marks on condoms.

122.    The excessive number of intent-to-use applications filed by Creative Resources, LLC and Veraxis Int'l, Inc. suggest that these entities, which were both owned and operated by Jud Ireland, only intended to reserve the marks and that they did not have the requisite *bona fide* intent under 15 U.S.C. § 1051(b) as of the respective filing date of each application.

123.    Plaintiff is or will be damaged by the continued existence of the '577

Registration. Specifically, Plaintiff's rights are impaired through Defendant's failure to demonstrate a *bona fide* intention to use the mark NAKED in commerce in connection with condoms and/or prophylactic devices as of September 22, 2003, the date that the '400 Application was filed. As such, Plaintiff requests that the '577 Registration be cancelled pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

**FOURTH CAUSE OF ACTION**

**(Void *ab Initio*, 15 U.S.C. § 1051(b)(3), 37 C.F.R. §§ 2.32(b) and 2.33(b)(2))**

124.    Plaintiff incorporates the allegations set forth in Paragraphs 1 - 11 and 26 - 42 above as though fully set forth herein.

125.    On September 22, 2003, Creative Resources, LLC, Defendant's predecessor-in-interest, filed the '400 Application with the US PTO pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

126.    Cindy Mason, acting as a personal assistant to Jud Ireland on an independent contractor basis, filed the '400 Application using the US PTO's online TEAS form on September 22, 2003.

127.    Cindy Mason personally inserted the electronic signature of Jud Ireland in the declaration accompanying the '400 Application and, in doing so, represented that Creative Resources, LLC had a *bona fide* intent to use the mark NAKED in commerce for condoms in International Class 10 as of September 22, 2003.

128.    The US PTO accepted the trademark filing and assigned a serial number to Creative Resources, LLC's trademark application on September 22, 2003.  In doing so, the US PTO considered the '400 Application to be complete on its face as filed, and therefore the trademark filing was not an *ex parte* examination issue requiring inquiry, further review or subjective judgment on the part of the examining attorney.

129.    Based on information and belief, Cindy Mason resided in Telluride, Colorado on September 22, 2003 when the '400 Application was filed with the US PTO.

19

130.    Based on information and belief, Jud Ireland was not physically present in Telluride, Colorado on September 22, 2003 when the '400 Application was filed with the US PTO.

131.    Jud Ireland did not personally insert his electronic signature into the declaration accompanying the '400 Application.

132.    Cindy Mason was not a member, officer, or corporate official of Creative Resources, LLC as of September 22, 2003.

133.    Cindy Mason was not a "qualified practitioner" as defined in 37 C.F.R. § 11.14 as of September 22, 2003.

134.    The declaration accompanying the '400 Application was not a verified statement under 37 C.F.R. § 2.2(n) because Jud Ireland did not personally enter his electronic signature under 37 C.F.R. §§ 2.193(a)(2), (c)(1).

135.    The declaration accompanying the '400 Application was not a verified statement under 37 C.F.R. § 2.2(n) because the declaration did not identify Cindy Mason as the name of the person who inserted the electronic signature under 37 C.F.R. § 2.193(d).

136.    The '400 Application was not accompanied by a valid verified statement as required by 37 C.F.R. §§ 2.32(b) and 2.33(b)(2).

137.    Creative Resources, LLC never filed a substitute verified statement for the '400 Application attesting that it had a *bona fide* intent to use the NAKED mark on condoms as of the September 22, 2003 filing date under 37 C.F.R. § 2.34(a)(2) and 37 C.R.F. § 2.71(b)(1).

138.    The '577 Registration should be cancelled as being void *ab initio* because the '400 Application was an incomplete trademark application under Section 1(b)(3) of the Trademark Act, 15 U.S.C. § 1051(b)(3), and 37 C.F.R. §§ 2.32(b) and 2.33(b)(2) because it was not filed with a valid verified statement on September 22, 2003.

## FIFTH CAUSE OF ACTION

### (Void *ab Initio*, 37 C.F.R. §§ 2.71(d) and 2.74(b))

139.     Plaintiff incorporates the allegations set forth in Paragraphs 1 - 11 and 26 - 42 above as though fully set forth herein.

140.     On January 27, 2004, Creative Resources, LLC, Defendant's predecessor-in-interest, submitted a request to the US PTO to amend the '400 Application pursuant to 37 C.F.R. § 2.71(a) and (d).

141.     Cindy Mason, acting as a personal assistant to Jud Ireland on an independent contractor basis, sent an email from her personal email account to the US PTO requesting that the goods in the '400 Application be amended to "condoms" in International Class 10 and that Creative Resources, LLC be amended from a "corporation" incorporated under the laws of the United States to a "limited liability company organized under the laws of Colorado."

142.     Cindy Mason personally inserted the electronic signature of Jud Ireland at the bottom of the January 27, 2004 email.

143.     Based on information and belief, Cindy Mason resided in Telluride, Colorado on January 27, 2004 when the request to amend the '400 Application was sent to the US PTO.

144.     Based on information and belief, Jud Ireland was not physically present in Telluride, Colorado on January 27, 2004 when the request to amend the '400 Application was sent to the US PTO.

145.     Jud Ireland did not personally insert his electronic signature into the January 27, 2004 email that resulted in the US PTO's amendment of the '400 Application.

146.     Cindy Mason was not a member, officer, or corporate official of Creative Resources, LLC as of January 27, 2004.

147.     Cindy Mason was not a "qualified practitioner" as defined in 37 C.F.R. § 11.14 as of January 27, 2004.

148.     The signature that accompanied the January 27, 2004 amendment was not verified under 37 C.F.R. § 2.2(n) because it was not a statement sworn to, made under oath, or supported by an affidavit or declaration.

149.    The signature that accompanied the January 27, 2004 amendment was not verified under 37 C.F.R. § 2.2(n) because Jud Ireland did not personally enter his electronic signature under 37 C.F.R. §§ 2.193(a)(2), (c)(1).

150.    The signature that accompanied the January 27, 2004 amendment was not verified under 37 C.F.R. § 2.2(n) because it did not identify Cindy Mason as the name of the person who inserted the electronic signature on January 27, 2004 under 37 C.F.R. § 2.193(d).

151.    The January 27, 2004 amendment to the '400 Application was not accompanied by a valid verified signature as required by 37 C.F.R. §§ 2.71(d) and 2.74(b).

152.    Creative Resources, LLC never filed a substitute verified signature for the '400 Application under 37 C.R.F. § 2.71(b)(1).

153.    The '577 Registration should be cancelled as being void *ab initio* under 37 C.F.R. §§ 2.71(d), and 2.74(b) because the request to amend the '400 Application was not accompanied by a valid verified signature when it was filed on January 27, 2004.

### SIXTH CAUSE OF ACTION

### (Void *ab Initio*, 15 U.S.C. § 1051(d)(2), 37 C.F.R. § 2.89(a)(3))

154.    Plaintiff incorporates the allegations set forth in Paragraphs 1 - 11 and 26 – 42 above as though fully set forth herein.

155.    On February 25, 2005, Creative Resources, LLC, Defendant's predecessor-in-interest, filed a request for an extension for filing a statement of use with the US PTO for the '400 Application (the "First Extension Request") pursuant to Section 1(d)(2) of the Trademark Act, 15 U.S.C. § 1051(d)(2), and 37 C.F.R. § 2.89(a).

156.    Cindy Mason, acting as a personal assistant to Jud Ireland on an independent contractor basis, filed the First Extension Request using the US PTO's online TEAS form.

157.    Cindy Mason personally inserted the electronic signature of Jud Ireland in the declaration accompanying the First Extension Request and, in doing so, represented that Creative Resources, LLC had a continuing *bona fide* intent to use the mark NAKED in commerce for

condoms in International Class 10 as of February 25, 2005.

158.    On March 25, 2005, the US PTO issued a Notice of Approval of Extension Request granting Creative Resources, LLC a six-month extension of time to show use of the mark NAKED on condoms in International Class 10.  In doing so, the US PTO accepted the First Extension Request as complete on its face as filed, and therefore Creative Resources, LLC's First Extension Request was not an *ex parte* examination issue requiring inquiry, further review or subjective judgment on the part of the examining attorney.

159.    Based on information and belief, Cindy Mason resided in Telluride, Colorado on February 25, 2005 when the First Extension Request was filed with the US PTO.

160.    Based on information and belief, Jud Ireland was not physically present in Telluride, Colorado on February 25, 2005 when the First Extension Request was filed with the US PTO.

161.    Jud Ireland did not personally insert his electronic signature into the declaration accompanying the First Extension Request.

162.    Cindy Mason was not a member, officer, or corporate official of Creative Resources, LLC as of February 25, 2005

163.    Cindy Mason was not a "qualified practitioner" as defined in 37 C.F.R. § 11.14 as of February 25, 2005

164.    The declaration accompanying the First Extension Request was not a verified statement under 37 C.F.R. § 2.2(n) because Jud Ireland did not personally enter his electronic signature under 37 C.F.R. § 2.193(a)(2), (c)(1).

165.    The declaration accompanying the First Extension Request was not a verified statement under 37 C.F.R. § 2.2(n) because the declaration did not identify Cindy Mason as the name of the person who inserted the electronic signature under 37 C.F.R. § 2.193(d).

166.    The First Extension Request was not accompanied by a valid verified statement as required by 37 C.F.R. § 2.89(a)(3).

167.    Creative Resources, LLC did not file a substitute verified statement under 37 C.F.R. § 2.89(a)(3) on or before February 28, 2005, six months after the August 31, 2004 notice of allowance date for the '400 Application, or at any point thereafter.

168.    The '577 Registration should be cancelled as being void *ab initio* because the First Extension Request was incomplete under Section 1(d) of the Trademark Act, 15 U.S.C. § 1051(d), because it was not filed with a valid verified statement as required by 15 U.S.C. § 1051(d)(2) and 37 C.F.R. § 2.89(a)(3).

## SEVENTH CAUSE OF ACTION

### (Void *ab Initio*, 15 U.S.C. § 1051(d)(2), 37 C.F.R. § 2.89(b)(3))

169.    Plaintiff incorporates the allegations set forth in Paragraphs 1 - 11 and 26 - 42 above as though fully set forth herein.

170.    On August 11, 2005, Creative Resources, LLC, Defendant's predecessor-in-interest, filed a second request for an extension of time for filing a statement of use with the US PTO for the '400 Application (the "Second Extension Request") pursuant to Section 1(d)(2) of the Trademark Act, 15 U.S.C. § 1051(d)(2), and 37 C.F.R. § 2.89(b).

171.    Cindy Mason, acting as a personal assistant to Jud Ireland on an independent contractor basis, filed the Second Extension Request using the US PTO's online TEAS form on August 11, 2005.

172.    Cindy Mason personally inserted the electronic signature of Jud Ireland in the declaration accompanying the Second Extension Request and, in doing so, represented that Creative Resources, LLC had a continuing *bona fide* intent to use the mark NAKED in commerce for condoms in International Class 10 as of August 11, 2005.

173.    On August 30, 2005, the US PTO issued a Notice of Approval of Extension Request granting Creative Resources, LLC a six-month extension of time to show use of the mark NAKED on condoms in International Class 10. In doing so, the US PTO accepted the Second Extension Request as complete on its face as filed, and therefore Creative Resources,

LLC's Second Extension Request for extension of time was not an *ex parte* examination issue requiring inquiry, further review or subjective judgment on the part of the examining attorney.

174.    Based on information and belief, Cindy Mason resided in Telluride, Colorado on August 11, 2005 when the Second Extension Request was filed with the US PTO.

175.    Based on information and belief, Jud Ireland was not physically present in Telluride, Colorado on August 11, 2005 when the Second Extension Request was filed with the US PTO.

176.    Jud Ireland did not personally insert his electronic signature into the declaration accompanying the Second Extension Request.

177.    Cindy Mason was not a member, officer, or corporate official of Creative Resources, LLC as of August 11, 2005.

178.    Cindy Mason was not a "qualified practitioner" as defined in 37 C.F.R. § 11.14 as of August 11, 2005.

179.    The declaration accompanying the Second Extension Request was not a verified statement under 37 C.F.R. § 2.2(n) because Jud Ireland did not personally enter his electronic signature under 37 C.F.R. § 2.193(a)(2), (c)(1).

180.    The declaration accompanying the Second Extension Request was not a verified statement under 37 C.F.R. § 2.2(n) because the declaration did not identify Cindy Mason as the name of the person who inserted the electronic signature under 37 C.F.R. § 2.193(d).

181.    The Second Extension Request was not accompanied by a valid verified statement as required by 37 C.F.R. § 2.89(b)(3).

182.    Creative Resources, LLC did not file a substitute verified statement under 37 C.F.R. § 2.89(b)(3) on or before August 31, 2005, the date that the preceding six-month extension period expired, or at any point thereafter.

183.    The '577 Registration should be cancelled as being void *ab initio* because the Second Extension Request was incomplete under Section 1(d) of the Trademark Act, 15 U.S.C. §

1051(d), because it was not filed with a valid verified statement as required by 15 U.S.C. § 1051(d)(2) and 37 C.F.R. § 2.89(b)(3).

## REQUEST FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor on each claim for relief set forth above and award it relief, including, but not limited to, the following:

1.      An Order reversing and vacating the decision in *Australian Therapeutic Supplies Pty Ltd*, Cancellation No. 92056381 (TTAB, December 16, 2021), denying the petition of cancellation against Defendant's U.S. Trademark Reg. No. 3325577, pursuant to 15 U.S.C. § 1071(b);

2.      An Order cancelling Defendant's U.S. Trademark Reg. No. 3325577;

3.      For a declaration from this Court that Plaintiff's NAKED Marks do not infringe on the trademark rights or any purported rights of Defendant;

4.      For such other and further relief as the Court may deem just and equitable.

Dated: February __, 2022                Respectfully submitted,

AUSTRALIAN THERAPEUTIC SUPPLIES PTY LTD


By: ___/Salvarez/_____
     James R. Menker (Florida Bar No. 0019306)
     E-mail: eastdocket@holleymenker.com
     Stephanie C. Alvarez (Florida Bar No. 0127280)
     E-mail:salvarez@holleymenker.com
     HOLLEY & MENKER, PA
     60 Ocean Beach Boulevard, Suite 3
     Atlantic Beach, Florida 32233
     Telephone: 904.247.2620
     Facsimile: 202.280.1177

     Andrew M. Smith (Oregon Bar No. 172774)
     E-mail: docketing@resonateip.com
     RESONATE IP, LLC
     115 NW Oregon Ave, Suite 12
     Bend, Oregon 97703
     Telephone: 541.240.8020

     *(pro hac vice application forthcoming)*

     Attorneys for Plaintiff, Australian Therapeutic
     Supplies Pty Ltd