UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-20493-CIV-MARTINEZ-BECERRA

AUSTRALIAN THERAPEUTIC SUPPLIES
PTY LTD,

    Plaintiff,

v.

NAKED TM, LLC,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** came before this Court on Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), (ECF No. 36), and Defendant's Motion for Partial Summary Judgment ("Def.'s Mot."), (ECF No. 75). Defendant filed a response to Plaintiff's Motion (Def.'s Resp.), (ECF No. 45), to which Plaintiff replied (Pl.'s Reply), (ECF No. 50). Similarly, Plaintiff filed a response to Defendant's Motion (Pl.'s Resp.), (ECF No. 84), to which Defendant replied (Def.'s Reply), (ECF No. 88). After considering the relevant briefing, the record, and being otherwise advised in the premises, the Court rules as follows.

### I.   FACTUAL BACKGROUND[1]

This action is an appeal of a final decision of the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office ("USPTO"). On December 16, 2021, the

---

[1]   The following pertinent facts are undisputed unless otherwise noted. When the facts are in dispute, they are taken in the light most favorable to the nonmovant. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).

TTAB denied Plaintiff's petition to cancel Defendant's trademark registration at issue. Plaintiff now seeks to appeal the TTAB's decision pursuant 15 U.S.C. § 1071(b).

Jud Ireland was the President of Creative Resources, LLC, Defendant's predecessor-in-interest. (Pl.'s Statement Material Facts ("Pl.'s SMF") ¶ 3, ECF No. 35; Def.'s Statement Material Facts ("Def.'s SMF") ¶ 3, ECF No. 76.) Cindy Mason was employed by Jud Ireland as an independent contractor to serve as his personal assistant. (Pl.'s SMF ¶ 4.) Jud Ireland gave Cindy Mason permission to file and sign documents on behalf of Creative Resources, including trademark applications filed with the USPTO. (*Id.* ¶ 8.)

On September 22, 2003, Creative Resources filed application Serial No. 78303400 (the "'400 Application") with the USPTO seeking to register the NAKED trademark for condoms. (Pl.'s SMF ¶ 18; Def.'s SMF ¶ 3.) On January 27, 2004, an amendment was filed with the USPTO requesting an amendment to the '400 Application. (Pl.'s SMF ¶¶ 30-31.) On February 25, 2005, Creative Resources filed a request with the USPTO for a first extension of time for filing a statement of use for the '400 Application. (*Id.* ¶ 38.) On August 11, 2005, Creative Resources filed a second request with the USPTO for a further extension of time for filing a statement of use for the '400 Application. (*Id.* ¶ 45.)

Plaintiff asserts that Cindy Mason personally inserted Jud Ireland's electronic signature into verified statements accompanying the initial trademark application on September 22, 2003, the January 27, 2004 email requesting an amendment to the '400 Application, the declaration accompanying the first extension of time on February 25, 2005, and the declaration accompanying the second extension of time on August 11, 2005. (Pl.'s SMF ¶¶ 22, 35, 41, 48.) Defendant argues that Jud Ireland does not recall whether he personally inserted his electronic signature or whether

he authorized Cindy Mason to do so. (Def.'s Resp. to Pl.'s SMF ("Def.'s Resp. SMF") ¶¶ 22, 35, 41, 48, ECF No. 44.)

On November 21, 2005, Plaintiff filed application Ser. No. 78758237 (the "'237 Application") with the USPTO for the mark NAKED CONDOMS for goods in International Class 10, including, "condoms, [such as] condoms made of latex." (Pl.'s SMF ¶ 52.) On September 10, 2006, Jud Ireland emailed Graham Porter, Plaintiff's owner, inquiring about the status of the Plaintiff's NAKED CONDOM mark, expressing concern as to whether both parties could use the NAKED mark for condoms in the United States. (Def.'s SMF ¶ 7.)

On December 18, 2006, Plaintiff emailed Defendant a draft copy of a coexistence agreement. (*Id.* ¶ 9.) The agreement provided in essence that (i) Plaintiff shall not use NAKED or NUDE in the United States other than as a subbrand for its core FOUR SEASONS mark; and (ii) Defendant shall not use or register any marks that are similar to Plaintiff's non-NAKED marks. (TTAB Opinion at 22, ECF No. 42-7.)

On January 3, 2007, Defendant emailed Plaintiff a counterproposal that "would be the basic terms of a final written agreement" providing that: (i) Plaintiff will not use or register any mark containing the word NAKED in the United States; (ii) Plaintiff will consent to Defendant's use and registration of the mark NAKED in the United States; (iii) Plaintiff will not take any action at law or otherwise object to Defendant's use or registration of the mark NAKED in the United States; (iv) Defendant will not use or register any mark containing the word NUDE in the United States; (v) Defendant will consent to Plaintiff's use and registration of the mark NUDE in the United States; and (vi) Plaintiff will not take any action at law or otherwise object to Defendant's use or registration of the mark NAKED in the United States. (Def.'s SMF ¶ 10; TTAB Opinion at 21-22.)

On April 4, 2007, the parties exchanged emails. Jud Ireland told Graham Porter that Defendant was "coming to market" and that they should put their agreement "on paper." (Def.'s SMF ¶ 11.) Graham Porter replied "[N]o need to put anything on paper. Just makes lawyers a lot of money. We no longer have any Naked condoms in the USA, so it should be clear sailing for you. Good luck with the launch." (*Id.* ¶ 12; TTAB Opinion at 23.) Defendant asserts that pursuant to the emails exchanged between Jud Ireland and Graham Porter, Plaintiff and Defendant entered into an enforceable settlement agreement. (Def.'s SMF ¶ 13.) Plaintiff disputes that the settlement negotiations created an enforceable contract. (Pl.'s Resp. to Def.'s SMF ("Pl.'s Resp. SMF") ¶ 13, ECF No. 86.)

On October 30, 2007, the '400 Application issued as Reg. No. 3325577 ("'577 Registration") on the USPTO Principal Register. (Pl.'s SMF ¶ 53.) On August 26, 2009, Creative Resources assigned all rights, title, and interest in the '577 Registration to Defendant. (*Id.* ¶ 54.) On March 2, 2011, the USPTO issued an Office Action to Plaintiff's '237 Application based upon Defendant's '577 Registration. (*Id.* ¶ 55.) Plaintiff deliberately took no action with respect to its '237 Application resulting in the USPTO declaring on September 29, 2011, that application to be abandoned. (*Id.*; Def.'s SMF ¶ 20.)

On October 29, 2012, Plaintiff filed a petition with the TTAB to cancel Defendant's '577 Application. (Pl.'s SMF ¶ 56.) After an appeal to and remand from the Federal Circuit, the TTAB entered an Opinion on December 16, 2021, holding that "the parties reached an agreement," that Defendant had a *bona fide* intent to use the NAKED mark at the time it filed its application, and that Defendant's NAKED mark does not falsely suggest a connection with Plaintiff. (Def.'s SMF ¶ 26; TTAB Opinion at 28, 43, 50.)

Plaintiff commenced this action pursuant 15 U.S.C. § 1071(b) on February 16, 2022, alleging likelihood of confusion under 15 U.S.C. § 1052(d) (Count I), false suggestion of a connection under 15 U.S.C. § 1052(a) (Count II), lack of bona fide intent under 15 U.S.C. § 1051(b) (Count III), void *ab initio* under 15 U.S.C. § 1051(b)(3), 37 C.F.R. §§ 2.32(b) and 2.33(b)(2) (Count IV), void *ab initio* under 37 C.F.R. §§ 2.71(d) and 2.74(b) (Count V), void *ab initio* under 15 U.S.C. § 1051(d)(2), 37 C.F.R. § 2.89(a)(3) (Count VI), and void *ab initio* under 15 U.S.C. § 1051(d)(2), 37 C.F.R. § 2.89(b)(3) (Count VII). (Compl. at 15-26, ECF No. 1.) Plaintiff now moves for summary judgment as to its fourth, fifth, sixth, and seventh causes of action, while Defendant moves for partial summary judgment as to its counterclaim for breach of contract.

## II. LEGAL STANDARDS

### A. TTAB Appeal

"Pursuant to 15 U.S.C. § 1071, a party dissatisfied with the TTAB's decision may either appeal directly to the United States Court of Appeals for the Federal Circuit or file a civil action in a United States District Court." *Boigris v. EWC P&T, LLC*, No. 19-21148-CIV, 2020 WL 1695462, at *3 (S.D. Fla. Feb. 25, 2020), *aff'd*, 7 F.4th 1079 (11th Cir. 2021) (citing 15 U.S.C. § 1071(b)). "A challenge to the TTAB's decision in a district court is 'both an appeal and a new action, which allows the parties to request additional relief and to submit new evidence.'" *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Intern. Software, Inc.*, 653 F.3d 448, 452 (7th Cir. 2011) (quoting *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001)). "In such an action, the district court wears two hats: '[it] is an appellate reviewer of facts found by the TTAB and is also a fact-finder,'" provided that new evidence is introduced to the court. *Id.* (quoting *CAE, Inc.*, 267 F.3d at 674).

"A court reviewing the TTAB's findings may not reverse those findings absent 'testimony which in character and amount carries thorough conviction.'" *Sandshaker Lounge & Package Store LLC v. Quietwater Ent. Inc.*, 602 Fed. App'x 784, 787 (11th Cir. 2015) (quoting *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991)). "The district court can reverse if it concludes that the law applied by the TTAB was incorrect. Moreover, any equitable rulings rendered by the TTAB may be reversed if the TTAB abused its discretion." *Soro v. Citigroup*, 287 Fed. App'x 57, 59 (11th Cir. 2008) (citing *Coach House Rest, Inc.*, 934 F.2d at 1557). Although the TTAB decision is "entitled to the most respectful consideration," it does not "collaterally estop re-litigation of the issue." *Freedom Sav. Loan Ass'n v. Way*, 757 F.2d 1176, 1181 (11th Cir. 1985).

### B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may show that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Rule 56 requires granting summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant is entitled to a judgment as a matter of law when the "nonmoving party has failed to make a sufficient showing on an essential element of [their] case." *Id.*

"The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0621MASRSWV15BND*, 766 F. App'x 795, 798 (11th Cir. 2019). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

When the moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, Rule 56 "requires the nonmoving party to go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts showing that there is a genuine issue for trial*." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added) (cleaned up). "[C]onclusory allegations without specific supporting facts have no probative value." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

At summary judgment, this Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus.*, 475 U.S. at 586; *Chapman*, 861 F.2d at 1518. "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant." *Chapman*, 861 F.2d at 1518. "However, an inference based on speculation and conjecture is not reasonable." *Id.* (citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 270 (1968).

## III. DISCUSSION

This action turns on whether the TTAB correctly held if the parties entered into a valid settlement agreement. Plaintiff argues that it is entitled to summary judgment as to its fourth, fifth, sixth, and seventh causes of action because Jud Ireland did not personally insert his electronic signature into the verified statements relating to the '400 application, request for amendment, and two requests for extension of time. Defendant counters that the TTAB correctly determined that the parties entered into an enforceable settlement agreement containing, among other things, a "no-challenge" provision, thus precluding this action. This Court will now address whether an enforceable agreement was entered into as determined by the TTAB.

"To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The basic tenets of contract law provide that a binding contract requires a "meeting of the minds 'by acceptance and performance within the terms of the offer.'" *Otworth v. Florida Bar*, 71 F.Supp. 2d 1209, 1215 (M.D. Fla. 1999) (citing *Sumerel v. Pinder*, 83 So. 2d 692, 693 (Fla. 1955)). Under Florida law, all parties to a contract must possess a "common or mutual intent to form a binding contract." 11 Fla. Jur. 2d Contracts § 20 (2009). Therefore, it is necessary "that there be a meeting of the minds as to all the essential terms of the contract." *Id.* "Like any contract, a settlement agreement is formed when there is mutual assent

and a 'meeting of the minds' between the parties—a condition that requires an offer and an acceptance supported by valid consideration." *Pena v. Fox*, 198 So. 3d 61, 63 (Fla. 2d DCA 2015).

"[A]n acceptance must contain an assent to the same matters contained in the offer." *Southernmost Marine Servs., Inc. v. One (1) 2000 Fifty Four Foot (54') Sea Ray named M/V POTENTIAL*, 250 F. Supp. 2d 1367, 1380 (S.D. Fla. 2003), *aff'd sub nom. Southernmost Marine Servs. v. M/V POTENTIAL*, 91 F. App'x 655 (11th Cir. 2004) (citing *Bullock v. Harwick*, 158 Fla. 834, 838 (Fla. 1947)). The burden is on the "party seeking judgment on the basis of compromise and settlement" to establish assent by the opposing party. *Nehleber v. Anzalone*, 345 So. 2d 822, 822 (Fla. 4th DCA 1977). Without assent or the meeting of the minds as to the essential terms contained in an offer, there is no valid acceptance. *Nichols v. Hartford Ins. Co. of the Midwest*, 834 So. 2d 217, 219 (Fla. 1st DCA 2002). "Acceptances can turn into counteroffers either by adding additional terms or not meeting the terms of the original offer." *Grant v. Lyons*, 17 So. 3d 708, 710–11 (Fla. 4th DCA 2009); *see Peraza v. Robles*, 983 So.2d 1189, 1189 (Fla. 3d DCA 2008) (determining that insurer's inclusion of a proposed hold harmless agreement and subrogation waiver release "constituted a separate additional requirement that conditioned the settlement on the submission of the requested documents," which acted as a counteroffer and rejection of plaintiff's original settlement offer).

A contract implied in fact is one "based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from the words of the contract." *Gem Broad., Inc. v. Minker*, 763 So. 2d 1149, 1150 (Fla. 4th DCA 2000). Florida law requires mutual assent as an "absolute condition precedent to the formulation of the contract." *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). Mutual assent is determined "by analyzing the parties' agreement process in terms of offer and acceptance." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014). Absent an

express contract a valid contract is premised on the parties' willingness to contract and "may be manifested through written or spoken words, or inferred in whole or in part from the parties' conduct." *Id.* (quoting *L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011). "The only distinction between an express and implied-in-fact contract is the manner in which the parties' assent is manifested or proven." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010). A "contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Company*, Inc., 695 So. 2d 383, 385 (Fla. 4th DCA 1997). The Eleventh Circuit considers whether the conduct was "such that a reasonable, objective person would have understood them to be an invitation to contract." *Kolodziej*, 774 F.3d at 741.

The TTAB held that "[t]he parties had reached an agreement as evidenced by the April 4, 2007 email where Respondent told Petitioner that the parties should put their agreement in writing and that Respondent wanted it memorialized." (TTAB Opinion at 28.) In support of its holding, the TTAB reasoned:

> The evidence shows that the parties reached an agreement. The mutuality of intent to contract is satisfied because the parties recognized their trademark issue and they communicated and exchanged offers to resolve it. The consideration for the contract is [Plaintiff's] agreement not to use or register the NAKED trademark for condoms in the United States and [Defendant's] agreement not to use or register the NUDE trademark for condoms. Finally, the lack of ambiguity in offer and acceptance is evidenced by the facts that [Plaintiff] stopped using the NAKED mark in the United States, [Plaintiff] did not interfere with [Defendant's] use and registration of the NAKED mark in the USPTO, [Plaintiff] registered the NUDE trademark in the United States, and [Defendant] did not interfere with [Plaintiff's] use and registration of the NUDE trademark in the USPTO . . . [Plaintiff] did not object and assert that there was no agreement, rather [Plaintiff] advised [Defendant] not to get the lawyers involved to put the agreement in writing. If there were no agreement, [Plaintiff] would have advised [Defendant] that there was no agreement or at least questioned [Defendant] as to why it wrote that there was an agreement.

*Id.* This Court agrees with the TTAB's well-reasoned contract formation analysis and finds that that the elements required to form a valid contract (i.e., offer, acceptance, consideration, and mutuality of intent) have been met.

Plaintiff is far from thoroughly convincing this Court that the TTAB was incorrect. The evidence presented thoroughly convinces this Court that the TTAB was correct in holding that the parties reached a valid agreement. Accordingly, Plaintiff's Motion is due to be denied, and summary judgment on Plaintiff's claims is warranted in Defendant's favor. *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1282 (S.D. Fla. 2008) ("When a party moves for summary judgment on one issue, it has been given sufficient notice for the court to enter summary judgment in favor of the non-moving party on that issue."); *see also In re Cox*, 200 B.R. 706, 708 (N.D. Ga. 1996) ("[W]hen a non-moving party is entitled to judgment as a matter of law, the court may grant summary judgment in favor of the non-moving party.").

That said, Defendant's Motion for Partial Summary Judgment on its breach of contract counterclaim is well taken. The elements of a breach of contract claim in Florida are: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)). First, the parties formed a valid contract as discussed above. Next, Plaintiff breached the agreement by "seeking to cancel [Defendant's] Naked Registration through these proceedings and attempting to register the mark NAKED in its own name." (Def.'s Mot. at 7-8.) Lastly, Defendant's Motion seeks partial summary judgment as to liability and the exact amount of damages remains a question of fact for trial. (*Id.* at 8-9.) This Court notes that Plaintiff did not address the material breach and damages arguments in its Response, and as such has waived the right to challenge those claims. *See Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond

to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."). Therefore, partial summary judgment for Defendant is warranted.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment, (ECF No. 36), is **DENIED**.
2. Defendant's Motion for Partial Summary Judgment, (ECF No. 75), is **GRANTED**.

This case shall proceed to trial to determine the amount of damages only.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26 day of September 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record